Good morning, ladies and gentlemen. We're ready for argument in Pennsylvania Chiropractic Association against Independence Hospital Indemnity Plan. Mr. Shelley. Good morning, and may it please the Court, I'm Anthony Shelley, here on behalf of the appellant, Independence Hospital Indemnity Plan. The District Court, prompted by the appellees in this case, adopted a novel theory for permitting medical providers to sue under ERISA. It said they had direct standing to sue because they are ERISA beneficiaries. The District Court's ruling distorts ERISA, transforming it into one that protects providers as opposed to just employees. The decision, though only around for a year, has already been criticized by District Courts and also by the Second Circuit. Am I correct that the two chiropractor plaintiffs both have provider contracts with the plans? They do, yes. They're in-network providers. That's your jargon, but... Sure, yes, they are contracted. If we just use lawyers' jargon, like contracts, then that's what I want to know. Yes, they have contracts. They have contracts with independents. The decision has already been criticized by District Courts and most notably recently by the Second Circuit in the Rojas decision. We think the Second Circuit was right, the District Court was wrong, and therefore that the District Court's decisions, because they're wrong for many reasons, should be reversed in their entirety. I'd like to first start with the difference between direct standing and derivative standing because it's really key to understanding the case. First of all, direct standing... What does standing have to do with this case? The parties in the District Court talk a lot about standing, but the Supreme Court says that standing means injury in fact, causation, and redressability. Plaintiffs plead injury in fact, causation, and redressability, so this case can't have anything to do with standing. It might have to do with whether the plaintiffs are beneficiaries, as ERISA uses that term, but that's a distinct term from standing. Is there anything here other than the question whether they are beneficiaries under ERISA? You're right, Your Honor. There's a difference between constitutional standing and what is deemed to be ERISA standing, but I will agree with you that the real question is... The Supreme Court has said there's no such thing as your statute name here, standing, right? That's one of the holdings of Lexmark against static control components a year and a half ago. I don't know why lawyers are paying no attention to the Supreme Court, but you can count on us to pay attention to the Supreme Court. So my question again, is there anything here other than the question whether they are beneficiaries, as ERISA uses that term? That's the main question, whether they are beneficiaries. I would also say that if they were, the scope of the injunction is too broad. Right. That I understand, but I'm trying to figure out whether you are using standing in anything like the way the Supreme Court wants that term used, or whether this is, again, just a little bit of jargon that is unrelated to how the Supreme Court uses the word standing. It is unrelated to the way the Supreme Court used it in Lexmark. All right. So let's use the right terminology. Let's do that. Let's begin then with the definitions that are relevant to the right terminology, participant and beneficiary. So a participant under ERISA is an employee or former employee of an employer who is or may become eligible to receive a benefit, and a beneficiary is a person designated by a participant or by the terms of an employee benefit plan who is or may become entitled to a benefit. So to be a beneficiary, there are two requirements. One is a designation requirement. You have to be designated by the participant or by the employee benefit plan's terms. And second, there's a requirement that even if there's a designation, you have to receive a benefit. Judge Cannelli found that there were both types of standing because there were both types of designations. But you can even skip over the designation idea because the second requirement, that even if there were proper designations, there was no benefit here that the providers received. There was no ERISA benefit. And I'd like to read just a few sentences from the Rojas case from the Second Circuit, which just a month or so ago. You can count on us to have read the Second Circuit's case. Reading verbatim from a case is not required. Well, what Rojas does is separate between payments for medical services rendered and coverage for illness or services received. The only type of benefit ERISA gives in a welfare benefit plan is coverage for medical services needed or received. It doesn't provide for some sort of benefit to providers for services they rendered. The court said that that was essentially the end of the matter because a provider, even if somehow designated properly, never receives a benefit. They might receive a benefit in the dictionary sense that they get an advantage or they get payment and everyone wants payment, so payment is beneficial to them. But they aren't receiving an ERISA benefit, which is the coverage, the guarantee that in the event of sickness or illness you won't go bankrupt because you have to pay your own medical bills. So in that sense, that really ends the case. They aren't beneficiaries for that reason. And what the EPILES say in response is, first of all, well, there are lots of cases out there where providers have been allowed to sue under ERISA, but those are not like they sought. Those are not cases where they sought to meet the definition of beneficiary. Instead, those are cases where a participant or beneficiary that did meet the definition then under the common law assigned their right and the party stood in the shoes as the beneficiary participant. So they didn't satisfy the definition, but under common law rules they became a beneficiary in that respect. So it is possible to have a provider and a patient under those circumstances be beneficiaries? Could you ask that again? Under those circumstances you described, it's possible then for the provider and the patient to be a beneficiary in terms of the assignment, once the assignment is made? Well, once the assignment is made, the patient is no longer relevant because all the rights have transferred to the provider, but the provider can only sue in the same way the assignor, the patient, could have sued. So the patient has to have been injured, first of all, and has to have assigned the right correctly. In this case, that theory doesn't work either, but Judge Kennelly really didn't even get to it. So then that's another question I have. We agree with you on the beneficiary point. Shouldn't we remand to the district court to make findings on the scope and validity of any assignments? I don't think so, Your Honor, because it's really a futile effort, and I'd like to just address that for a second. One is that if there were assignments, and again, the Rojas case gets into this, the patients were never liable for anything, in the sense of there is dispute about whether the providers could seek payment or not, and we say they couldn't. But what Rojas says is that if the insurer never sought money, the recoupment here, from the participant themselves or the beneficiary themselves, there's nothing to assign. The dispute becomes exclusively one between the provider and the insurance company because there's nothing that the insurance company has ever sought in the recoupment, for instance, from the individual. So you can't assign something. There's nothing negative that's occurring from the insurance company in that recoupment situation. And so if there's a correct assignment, it doesn't matter. It doesn't matter in that situation because there's nothing being assigned. The only money sought here was from the providers. Now, they had a right. If they didn't like that, they had a contract, as Judge Easterbrook mentioned. There's contract law. There's Pennsylvania state insurance law. There are remedies in state courts if they didn't like that. We don't think they would win, but that doesn't suddenly get them into the world of ERISA, trying to sue on behalf of a beneficiary who was never, no recoupment was ever sought. The next question on that view is whether there is any other source of federal jurisdiction. How about diversity jurisdiction? Well, the plaintiffs are Pennsylvania parties, as are the defendants, and so. . . All right, so you think there isn't complete diversity. Correct, and it really. . . I see your point that supplemental jurisdiction could potentially. . . No, there can't be supplemental jurisdiction if there's no federal claim. But there can be diversity jurisdiction. True, true. There isn't anything. . . On your view, there's nothing to which anything else could be supplemental. Not anymore. No, it's not any. . . Let's not pursue this. There's no supplemental jurisdiction. Well, I will agree, then, that if diversity jurisdiction is the sole basis, there isn't diversity because both parties are from the same state, Pennsylvania. The other thing I want to mention, Judge Williams, is that on the assignment theory descended back to the district court, not only is it not necessary because independents never sought any money from the individuals who would be the assigners, but this court's decision in Moreland makes clear that assignments are backward-looking. You can only assign past remedies that can be monetized. You can't assign future-looking rights. So what you have here is that the providers want future-looking injunctions that give them appeal rights and procedures going forward for future recoupments. That's never something you can assign under Moreland. You can only assign, say, the benefits for the past monies taken. But that kind of went away when class certification was denied and only Barnard and Wanner were left in the case. So those are two reasons in addition to the ones we stated in our brief why going back to the district court for this assignment theory would be unnecessary. In addition, this case is really one brought by the PCA for the most part, and you really can't have representative standing in that sense, in that more constitutional sense, for an organization in a setting where you have to go and look at individual assignments of all of their members, the provisions of the plans of all of the participants, and determine, well, what's the assignment say in this case, and what does the plan say in this case as to anti-assignment provisions? And so, therefore, we would say that to send it back for the additional inquiry, Judge Williams, that you suggested would not be necessary here. Really in response to all this, the appellees say, while there are lots of these other cases out there that don't really fit our mold, Kennedy, they say, fits the mold here. And Kennedy is a case that really can't be stretched to the degree that the appellees want here. And that's because, in fact, in Kennedy, the court was pretty clear that what they were doing was looking to the injury of the actual patient in that case. And since the patient had no liability in the case, then the provider lost on the merits. And so that looks a lot more like the provider wasn't a beneficiary in the first instance. In addition, the court clarified Kennedy first in Decatur and then in Moreland. And in Decatur, the court noted that, under the Kennedy theory, when an assignee provider gets into federal court under the definitions of ERISA, it does so because it stands in the shoes. Use those words. Decatur uses those words. Stands in the shoes of the participant or beneficiary and can only sue to the extent that the participant or beneficiary could. So that, again, doesn't look like the provider can actually itself satisfy the definitions. And then, in addition, ten years later, in Moreland, the court again talks about what Kennedy meant and talks about Kennedy meant that, with an assignment, the provider acts as the participant or the beneficiary who made the assignment. That can't be, then, that the provider meets the definition of beneficiary because then they would just be a beneficiary. They wouldn't be a participant or a beneficiary. What they do through the assignment is they become a participant or beneficiary through that route, leave the assignment in the common law. So we would say that the way in which the district court held below, that it had beneficiaries before it was incorrect. The providers didn't meet the definition of beneficiary. And in addition, to send it back now to see if they could get there derivatively through the assignment theory, has a whole host of problems that really make it futile. A couple of other points I'd like to mention. One is that even if you found that the providers were properly before the court in an ERISA claim, the relief the court awarded was an injunction, and that's really not an appropriate form of relief for violation of supposed claims regulations. We, of course, don't think any claims violations occurred because, in fact, these were not beneficiaries or participants who were seeking the procedures, and, in fact, they had no authorized representative forms of any type to act on behalf in a claims or appeal on behalf of the particular participants or beneficiaries. But, in any event, what the DOL says is the remedy for any kind of violations for claims violations or procedural violations is actually excusal of exhaustion in a benefits claim. That's not here what the providers sought. Instead, they sought a forward-looking and broad injunction to forevermore constrain independence in the way they dealt with provider claims. That's nothing that the DOL regs suggest is the appropriate result, and you can't allow the appellees to get relief under 502A3 of ERISA, the injunctive or equitable relief remedy, when, in fact, the right remedy is the benefits claim relief in the first 502A1B of ERISA. They're hierarchical in that sense. So here they went right to 502A3 when the real remedy is 502A1B, but they lost class certification, so they couldn't seek those benefits anymore, and they look altogether for the injunctive relief. So we think the injunction is improper for that reason as well as the ones we stated in our brief. And then, lastly, on attorney fees, we think we were right below, so there's no basis for awarding attorneys' fees against us, shifting fees under ERISA. But even if we were wrong, on this issue of whether they're a beneficiary, we followed the case law that was out there, hook, line, and sinker. Every court of appeals, for instance, to have addressed this issue of whether a provider meets the definition of beneficiary is held opposite. It's held the way we want them to hold, as the Rojas court again stated. And so to argue that we weren't substantially justified, which is the test under the attorney fee analysis, it's impossible in that situation. And even the district judge agreed that we were within our realm of action because he stayed the injunction because reasonable people could disagree about the merits of the case. But then he awarded fees against us saying we weren't substantially justified. So that doesn't all hold together. And so we think, again, the decisions below should be reversed, and there's really no reason, again, for remand. This should have been in state court in Pennsylvania. It's a provider dispute under the contract. So I'd like to save the remainder of my time for rebuttal. Please, the Court. I am Brian Hufford from Zuckerman Spader on behalf of the appellees in this action. ERISA has established a comprehensive civil enforcement scheme that provides the exclusive remedy for violations of plan terms and for ensuring the benefits are properly paid by beneficiaries. Mr. Hufford, I want to make sure that you agree with the answer Mr. Shelley gave to my question. Do the two individual chiropractors here have contracts with the defendant? Yes, they do. Okay. And so let's move on from there. You began by talking about ERISA's enforcement scheme. Where do I go in the record to see the plan terms these two chiropractors are trying to enforce? If you look, basically a number of plans were put into the record. The Court basically focused on two of them, Plaintiff's Exhibit 38 and Plaintiff's Exhibit 59. Those were the two plan documents that were introduced. 38 and 59. 38 and 59. 38 and 59. The Exhibit 38 was identified as the Personal Choice Health Benefits Plan Group Contract. And it detailed the benefits that were available under the plan and the coverage issues for what services could be provided under the plan. Exhibit 59 was a Keystone Evidence of Coverage. It refers to as a handbook. And throughout the document. No, no, no, no. I'm trying to be clear. Where do I go to see the plans? I'm not interested in handbooks. Well, no, these in fact are the plans. For example, in the evidence of coverage, when it identifies what are the terms of the plan, it specifies that any rights of the member to receive benefits under the contract and handbook. It says the HMO is not liable under the contract and the handbook unless they receive proper notice. I'm lost. There has to be a separate plan document. Is the argument that the handbook is a summary plan document? No, Your Honor. In fact, what these are, the way these systems work is that there will be a contract that Independence has entered into with the plan. The plan will establish a process to provide insurance. It will then hire Independence to provide the insurance. And it issues a document that is an evidence of coverage that summarizes the details, what are the rights and remedies. What about an ERISA plan? Well, Your Honor, I think. There are lots of contracts involved in the carrying out of ERISA plans. But somebody who's claiming to be a participant or a beneficiary under a plan has to make a claim under a plan and not under a contract that third parties have drafted for carrying out a plan. That's why I ask, where do I go to find the plans on which this suit necessarily rests if it is a claim by a beneficiary of a plan? Your Honor, I think the issue is these two documents are in fact represent the contractual terms that is enforced. Not what I asked. I asked for a location of a plan and not a location of a contract that may help implement a plan. If this is a claim under a contract, then it's a claim under a contract. And then one can have a contract suit. That's simple. If it's a claim under ERISA, it has to be a claim under a plan. And, you know, literal-headed people like me, therefore, want to see the plan. Well, I think the problem here, Your Honor, is the way the system works in the health care context, the evidence of coverage is what all the parties recognize for purposes of benefits as the plan. I don't care what parties recognize. I care what ERISA does. There's a foundational document, and it's the plan. And as I say, there may be lots of contracts that people then negotiate to carry out their duties under the plan. There may be insurance contracts that carry out a plan. There may be contracts, provider agreements, between insurers and medical providers. But they aren't the plan. In order to have a suit by a beneficiary under a plan, it has to be a suit to enforce the terms of a plan. That's why I want to see a plan. Well, I apologize for struggling here a bit, Your Honor. But in terms of the way every court has ever addressed the issue when there is a dispute over benefit payments, what the court looks at, what the insurance company looks at, what the parties look at, what the plaintiffs look at is the evidence of coverage. There may be another plan document. And, again, I think it's important to recognize that under ERISA there's a reference to plan documents. Just one plan. But I don't think, Your Honor, there's simply one plan document. That's what's critical here. There may, in fact, have been some other document. ERISA doesn't talk about beneficiaries under plan documents. It talks about beneficiaries under a plan. But I guess the problem here, Your Honor. Let me tell you what my basic problem is. I hope you can see my basic problem. Our decision in Kennedy, the plaintiff was an assinee of a claim directly under an ERISA plan. The plaintiffs in this suit seem to be people who have contracts. You call them provider agreements with an insurance company. And you're just assuming that these contracts are plans or part of the plan. But that's the thing you have to establish if you're going to bring yourself within the scope of Kennedy. And asserting it loudly doesn't establish it. Well, I think, first of all, there's two separate issues. While it's true that our providers have separate contracts that make them in-network providers, that's not what Exhibits 59 and 38 are. There's a separate contract that a provider has that says we are going to be providing health care services to plan members, to insured parties. And in exchange for that, we will be reimbursed our cost. That is not what Exhibits 59 and 38 are. Exhibits 59 and 38 are the documents issued by the plan to state these are the contractual rights that the members have to receive health care services in exchange for payment of benefits. There literally would be no other document, and certainly none has been identified by independents or otherwise, that details what are the contractual remedies available. Now, during the course of discovery, we, in fact, asked for discovery to produce plan documents. These are the documents that were produced. When independents made a summary judgment motion under the plans, these are the documents they referred to. And I would suggest that virtually every case that has addressed what plan documents are, they're looking at the evidence of coverage. That's not the contract for the provider. That is the contract that governs what benefits and services are owed to beneficiaries under the plan. So I understand that there may be some other document that effectively says we've established a plan, and by establishing that, we now are going to rely on the evidence of coverage issued by independents to detail the legal rights under this plan. One of the points you make is that disputes over the amount of payment are ordinary contract disputes. Why isn't that inconsistent with your view that money is the benefit that makes one a beneficiary? Well, the issue, Your Honor, on those cases, and it started, I think, with the Pascat case in the Third Circuit, but most courts have recognized it, is that if there's a dispute solely over how much, so in effect, if you're a provider, you provide a service and your separate contract says I'm entitled to $100 for that, you only paid me $50. The plan does not govern whether it's $100 or $50. The plan says if you're in network, we're going to pay you subject to the contract. As long as you don't have to look at the plan documents, then it's an issue that arises under the in-network contract. But nevertheless, the benefit is the amount of money that is paid for providing a health care service. The Montefiore case in the Second Circuit made that clear, where it described both in-network and out-of-network contexts, and it said that however you frame it, when you pay money under the plan, you are reimbursing for the cost of medical services, and it's the right to receive that money that in fact is the benefit under the plan. And I think that's where you really look at the problem with the Rojas case. In fact, every court up until Rojas has recognized that it's really the payment of money that is the benefit under the plan. In Judge Easterbrook's decision in Kennedy, he said – Not my decision. I apologize. It was the court's decision. I apologize. In the Kennedy decision, it specified that the payment of benefits is sufficient to give standing – to make the provider a beneficiary. In the Decatur case, it says if you get a designation to receive benefits, that makes you a statutory beneficiary, citing the definition. In the First Circuit case – I just don't – I must say I just don't understand that. I'm now staring at 1132A1B, which is what this claim rests on. And it says a civil action may be brought, and I quote, to recover benefits, do him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. Yes. There has to be a plan. Not a contract implementing a plan. Not a provider agreement. The claim has to be under the plan. That's what the statute says. But, Your Honor, if you look at literally every single case to arise under ERISA, it involves the evidence of coverage. That's the document they look at. Look, we do a lot of these.  Kennedy said, I've got this assignment of benefits, and the assignment entitles me under the terms of the plan to X dollars. Right? And he relied on the terms of the plan. Didn't rely on a separate contract with an insurer. But, Your Honor, I mean, and I apologize that they keep coming back on this issue, but these exhibits, the evidence of coverage is a plan document, as defined by the Department of Labor, that controls what are the benefits available under the plan. It's incorporated into the plan. The plan incorporates it and relies on the evidence of coverage to establish the benefits. But going back to the Rojas case, there are really three issues here, I think, that are critical. First of all, there is no real issue for benefits in Rojas. What was happening in that case is the plaintiff was seeking to apply the anti-retaliation provision of ERISA because the in-network provider had been excluded from the network. And so they were challenging something that did not involve interpreting plan terms, interpreting what benefits were available. Moreover, the plan in that case did not designate a participant. I think what's critical here is if you look at the definition of beneficiary, it's very broadly written under ERISA. It does not say it's merely the employee or the designated, the dependence of the employee. It says it's any person which is defined to include corporations and associations who may become entitled to the benefit. And in our case, the plans, the documents do in fact do that. In the Rojas case, the plan documented issue, which was an evidence of coverage, merely specified that the money will go to the patient and the insurance company has the discretion to decide to pay the provider. So there was no actual designation of benefits. And I would suggest, Your Honor, that in Rojas, for example, it was the evidence of coverage, the same kind of document here, that was at issue. Moreover, in Rojas, again, its sole reason for not denying the benefits is its conclusion for denying the right of the provider to assert claims under ERISA, was its conclusion that the benefits are the right to receive health care. But again, every circuit court to consider it has rejected that analysis. The First Circuit in Danka, for example, explicitly addressed that and said that the whole purpose of an ERISA plan is to reimburse parties for receiving services. It's not the services themselves. Independence is not a health care provider. It merely provides reimbursement for the cost of health care services. And so right now, I think Rojas, in fact, is inconsistent with other Second Circuit decisions. In the Montefiore case, the Court held that an in-network provider, the Second Circuit held an in-network provider has standing under ERISA based on an assignment of benefits. Because of this. I must say, I still don't understand the continued reference to standing. I apologize for using that word. It's the right to — When you use the term standing, what are you referring to? Your Honor, over the years, courts as well as parties, I agree you have improperly referred to statutory standing. There's no such thing as statutory standing. And I acknowledge that, Your Honor. The question is whether the plaintiffs are beneficiaries. Right. That word is used in a particular statute. Yes. And I think this circuit in particular has repeatedly referred to providers as being beneficiaries under ERISA. When they've received assignments, designating them as the recipients. I think two cases that are critical here are the central state versus neurobehavioral health and the trust mark cases. Those cases both involve the identical issue to what's before this Court on whether a dispute over repayment of benefits in an effort to recoup benefits arises under ERISA. Those courts held that when a participant receives benefits at the behest of — when a provider receives benefit payments at the behest of a participant, that provider becomes a statutory beneficiary entitled to assert ERISA claims. This Court also held in those decisions that as a result, a dispute between an insurer and a provider over recoupments of previously paid benefits goes to the heart of ERISA. And indeed, it held in the central state's case that state law claims would be preempted by ERISA. So Mr. Shelley tries to argue that this — Judge Kennelly's decision somehow is an unusual stretching language, but all Judge Kennelly did was apply the law of this circuit and most other courts, which hold that when a provider is what the party entitled to the money for services, that provider is also entitled to challenge the benefit. I think here an important case is the principal case by Judge — the principal decision, where this Court extended the holdings in Kennedy and found that a provider who's been designated to receive money for providing services is a beneficiary under ERISA. But not only that, that provider is also then entitled to the notice and appeal rights of ERISA under 29 U.S.C. 1133. And what the Court held there was the only issue is did the insurance company have notice or understand that there had been an assignment. Here, of course, it's clear because the documents themselves specify. I mean, if you look at Independence's brief on page 25, they concede that these documents, in fact, provide that the benefit payments will go directly to the providers. The sole witness at trial, Linda Patterson for Independence, she also testified — I believe it's page 374 of the transcript — that the plans that they issue, and she referred to them as the plans when she was citing these two documents, she specified that the money goes to the providers. And I would highlight there with Linda Patterson, she testified that when you look — when Independence is trying to evaluate what benefits are available under the plan, you look at these documents, Exhibit 38, Exhibit 59. That is the document that Independence looks at to determine what benefits are available. And she made clear that the money goes to the provider. Now, I think what we have to look at here is sort of the world that's being structured by the two parties. The plaintiff's argument is that ERISA is designed to ensure benefits are properly payable and to ensure that insurance companies properly interpret the plans and the benefits available when they're making benefit denials. We are arguing that when the money is going to the provider, the provider is in the best position to challenge that benefit denial, and it facilitates and advances the goal of ERISA. In the 11th Circuit of the — We aren't. I understand this dispute correctly. This isn't about whether providers can challenge what the insurers are doing. It's whether they can challenge it under ERISA or whether they have to challenge it under the law of contracts. But the issue here, though, Your Honor, is that ERISA, as held in the central states case, actually preempts state law. Referring in this court to the central states case isn't very helpful. I apologize. There are hundreds of central states. In the central states versus neurobehavioral health case, this court held that ERISA would preempt a challenge between an insurance company and a provider. It would preempt state law challenges to recoupments and repayment of benefits. Because while it's true 59 and 38 in effect provide contractual rights, and courts have recognized that a benefit claim under ERISA is effectively comparable to a contract claim, that's really what it is. Do you have a contractual right to benefits? But that has to be dealt with under ERISA. And ERISA has established under 1133 of the statute as well as under the claims procedures. So you think, I'm having trouble wrapping my head around this, you think that if your clients negotiated with insurers provisions for notice that were more favorable to your clients than ERISA provides, that would be preempted? If it was a benefits claim, ERISA governs it. Yes, I would say it would be preempted. Look, the insurer is busy saying these are not claims by beneficiaries or to benefits, and therefore it's outside the scope of ERISA. I'm just trying to wrap my head around that your claim, apparently, that if your client negotiates a contract with an insurer calling for particular procedures to be used to resolve disputes between the insurer and in-network providers, those procedures are preempted by ERISA. Is that really your position? If it directly relates to the interpretation of planned documents, yes. And what I mean by that is, I mean, Mr. Shelley was wrong in saying this is not an issue that impacts patients. Ms. Patterson at trial testified that with these repayment demands. I'm not interested in what people have testified to. ERISA is what it is. It's a statute. It is not changed by testimony. It is not interpreted by testimony. But my point, Your Honor, however, is that in this case the providers could in fact balance bill the patients. The patients were liable for these. Independence has conceded that, that the patients were liable, and the provider who were designated to receive the payments, and Independence went after them for it, were entitled to challenge it. If you look at the policy here, Independence says. Thank you, Your Honor. Anything further, Mr. Shelley? I just have three short points. One is there is no plan in the record, as we stated in our brief. There is no employer testimony and no employer document. Employer testimony isn't going to help one way or the other. I don't for a second comprehend why there was a trial in this case. This is a statutory claim. Anyway. We agree, though, that there's no plan document. There's no plan in the record. No ERISA plan in the record. And to Judge Williams' question about rate of payment versus right of payment, the cases do sometimes. This circuit's never adopted that formula, but other circuits have. But that only comes into play when a provider is properly before the court as a beneficiary, suing derivatively, where they have the assignment, where there's no anti-assignment provision, where the patient is on the hook and the insurer's going after them. None of that occurs here. So the idea that this turns on right of payment versus rate of payment is an irrelevancy. And then last, I think Mr. Hufford said it was my language that Judge Cannelli issued a ruling that was unprecedented. It's not my language. It's actually the language of a district court in Arizona and the Second Circuit in the Rojas footnote where Rojas calls Judge Cannelli's decision confused. So we think it's confused, too, and wrong, and the court should reverse it. Thank you very much, counsel. The case is taken under advisement.